### Dean v. The State.

1. Where there is no affidavit by the accused or his counsel that the alleged newly discovered evidence was unknown at the time of the trial, a new trial will not be granted on the ground of newly discovered evidence.
2. The evidence warranted the verdict. There was no error in any of the rulings or charges of the court complained of, nor in denying a new trial.                    Judgment affirmed.

October 24, 1893.

Indictment for burglary. Before Judge Bartlett. Bibb superior court. April term, 1893.

The motion for a new trial contains the general grounds, and sets up newly discovered testimony as con-

tained in an affidavit of Fannie Hill. There was no evidence for the defendant at the trial. From the cross-examination of the State's witnesses and from the defendant's statement to the jury, it appears that the theory of the defence was that Henry Calhoun, and not the defendant, was the burglar. This was contradicted by the testimony of Calhoun and his mother. The evidence further disclosed that the burglary was committed in a hardware store, and that the articles stolen were knives, etc., some of which were recovered from the defendant and others to whom he had delivered them, and some were never recovered. The affidavit of Fannie Hill is to the effect that she saw Henry Calhoun's mother in possession of certain new knives and forks, about two or three months after the burglary, which she gave to a colored man who took them away, this man having just remarked that she would get herself into trouble if she did not quit having negroes around her; that two days afterward she whipped her son Henry, took from him a new pocket-knife and concealed it in her own pocket; and that the affiant did not communicate this information to defendant or his counsel, because she was not asked about it, had no connection with the case, and did not know until after the trial that the defendant had been arrested or charged with burglary. No other affidavit accompanies this ground.

Henry Calhoun was introduced as a witness in rebuttal of the defendant's statement. On cross-examination he testified: "I have never been to the chain-gang. I was found guilty of stealing chickens in the city court, but was paid out." This testimony was admitted without objection at the time it was given. Afterwards the solicitor-general moved to rule it out, on the ground that there was higher evidence of the trial and conviction of the witness. The court asked counsel for the defendant what he had to say to that. He replied that he had

no objection, as he would send and get the record. It is insisted that the court erred in ruling out the evidence, as the defendant was entitled to the benefit of the impeachment of the witness brought about by his own statement of his conviction.

The court charged: "If the house was closed with blind shutters and fastened or closed, and they were prized open and the window raised out of its place, that would be such a breaking as the law would denominate a breaking in the case of burglary." It is said that under this charge the jury could have found the defendant guilty of burglary, although he did not enter the house, the effect of the charge being that prizing open the blind shutter and raising the window would amount to burglary.

The court charged: "Possession of stolen goods, in case of burglary, recently thereafter, goods that were stolen at the time the burglary was committed, with no explanation by the defendant or no satisfactory explanation by the defendant how he came by them, with clear proof of a burglary having been committed and clear identification of the goods, may authorize the jury to convict the defendant upon such possession of stolen goods, if that evidence satisfies their minds beyond a reasonable doubt of the defendant's guilt." It is contended that this was error, because the court gave the jury no legal standard for judging of recent possession; that the court stated a series of facts in an argumentative way and following out the theory of the State, and then instructed the jury that these facts would authorize a conviction; whereas the court should have merely laid down the abstract rules of law governing this point, and left the jury to determine whether these facts constituted burglary.

The court charged: "You see what he said about it when he was found in the possession of any property,

if he said anything. See what he did with the property that was stolen at the time it was found in his possession, if any was stolen and found in his possession soon thereafter; what account he gave of it, if any." This is claimed to be erroneous for the reason that the court did not instruct the jury as to the law of confessions, it being contended that the State sought to prove certain statements by the defendant at the time of his arrest, which statements he claims were in the nature of confessions. It does not appear from the brief of evidence that the defendant made any statement in the nature of a confession, or intended to make any. Policeman Jenkins testified: "When I arrested this boy he didn't say anything about seeing Henry Calhoun in a hole with his feet up. He did not say anything about buying a dozen knives from him. He said he bought the knives he had from him. He said he had not sold any knives. We asked him about the knife he sold to Mose Green, and he said he hadn't sold any."

ESTES & FRIED, for plaintiff in error.

W. H. FELTON, Jr., solicitor-general, *contra*.